256 U.S. 582 (1921)
DISTRICT OF COLUMBIA
v.
R.P. ANDREWS PAPER COMPANY.
DISTRICT OF COLUMBIA
v.
SAKS & COMPANY.
DISTRICT OF COLUMBIA
v.
LISNER.
Nos. 282-284.
Supreme Court of United States.
Argued April 22, 25, 1921.
Decided June 1, 1921.
CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.
*583 Mr. F.H. Stephens for petitioner.
Mr. M.D. Rosenberg and Mr. Charles L. Frailey, with whom Mr. E.H. Jackson was on the brief, for respondents.
MR. JUSTICE CLARKE delivered the opinion of the court.
These three cases, tried on agreed statements of fact, were argued and will be disposed of together.
The respondents were assessed a rental upon vaults under sidewalks which were used in connection with business conducted in adjacent buildings. They refused to pay the assessments, and, in these suits to collect them, judgments were rendered by the Supreme Court in favor of the District, which were reversed by the Court of Appeals on the ground that the act of Congress authorizing the assessments was applicable only to constructions permitted after its date.
*584 The essential facts are as follows:
The appropriation act for the District of Columbia, approved September 1, 1916, c. 433, § 7, 39 Stat. 676, 716, provided:
"That hereafter the Commissioners of the District of Columbia are authorized and directed to assess and collect rent from all users of space occupied under the sidewalks and streets in the District of Columbia, which said space is occupied or used in connection with the business of said users."
Pursuant to this authority, the Commissioners caused the space occupied by vaults of each of the three respondents to be valued and then assessed against each of them a rental which it is stipulated is "fair and reasonable" in amount "if it be a legal charge."
The permits involved in the Paper Company and Lisner cases were issued before the act complained of was passed and these two cases will be first considered.
The essential provisions of each of these permits are:
"This is to certify that . . ., has permission to build vault. . . as per plan . . . in accordance with application . . . on file in this office, and subject to the provisions of the Building Regulations of the District of Columbia." There is nothing in either permit in the nature of a grant or which enlarges the permission beyond the terms quoted.
When these permits were issued, the Building Regulations provided (paragraph 9):
"No charge will be made for the occupancy of public space by vaults or areas, except the usual permit fee, and all permits for such occupancy are subject to revocation by the Commissioners at any time without compensation, when the vault space is needed for public use or improvements. . . . And this permit is accepted with the understanding that the occupation of the vault space is permitted merely as an accommodation to the owner of *585 the abutting premises and that no right, title or interest of the public is in any way waived or abridged thereby, except as expressed in said permit and the conditions aforesaid." Then follows an agreement by the licensee to use the vault only for the purposes authorized by the Commissioners.
And paragraph 3 provided:
"The application for a vault must be accompanied by a written agreement, upon an official blank, signed by the owner of the abutting property, . . . contracting to release and relinquish the vault space and to remove, free of expense to the District, all machinery, fixtures, or structural parts of the vault when so ordered by the Commissioners, or needed for public uses." The only charge made by the District was one dollar for the permit to construct.
Pursuant to paragraph 3, supra, the applicants each signed an agreement in precisely the same form, accepting the permit on condition (1) that the District shall have the right to construct under, over or through the vault public sewers or other underground construction which it may deem necessary, without compensation; and (2) that upon notice from the District of a desire to place any such construction in the area occupied by the vault, space clear and sufficient for it shall forthwith be made therein (by the acceptor) "without cost to the District." The acceptance concludes, "This permit is accepted with the understanding that the occupation of the vault space is permitted merely as an accommodation to the owner of the abutting premises, and that no right, title or interest of the public is in any way waived or abridged thereby, except as expressed in said permit and the conditions aforesaid."
The respondents, the R.P. Andrews Paper Company and Abraham Lisner, defended against the collection of the assessments, claiming that their permits to construct *586 were in such form as to create in each by contract a vested right of property in the vault in the street, of which they would be deprived without due process of law if they were required to pay the rental.
To sustain this position, the respondents select from paragraph 9 of the Building Regulations, supra, the provision that "no charge shall be made for the occupancy of public space by vaults," and that all permits are subject to revocation "when the vault space is needed for public use or improvements." From paragraph 3, supra, they select the stipulation that the vault space shall be vacated when ordered by the Commissioners "or needed for public uses," and from the terms of the acceptances of the permits the provision, that the Commissioners may place in the vaults any construction they may "deem necessary." Grouping these unrelated excerpts together it is contended that they constitute a contract on the part of the District to leave the respondents in the undisturbed possession of the vaults, free of charge, until such time as the space may be demanded because needed for some public use and improvement, and that since the act of Congress under which the disputed rental is imposed is purely a revenue measure which does not require the surrender of the space for any public use, but contemplates the continued private use of it, it is an invalid attempt to deprive the respondents of their property without due process of law.
This statement of the contention of the respondents is its own sufficient refutation.
In form the permit is a mere naked permission to build. Two of the three clauses relied upon to create rights of property in the streets are derived from the Building Regulations, which, as their name implies, are designed to regulate the materials of buildings and the manner of their construction and use,  they are not looked to, on such a mere reference as we have here, for a grant of rights *587 in streets,  and the third clause is from the acceptances of the permits, which are signed only by the applicants. When to this we add that, the applications culminated and ended in acceptances of the permits "with the understanding that the occupation of the vault space is permitted merely as an accommodation to the owner of the abutting premises and that no right, title or interest of the public is in any way waived or abridged thereby, except as expressed in said permit and the conditions [in the acceptances] aforesaid," and that the settled rule of law is that the grants of rights and privileges in streets are strictly construed so that whatever is not unequivocally granted therein is withheld, and that nothing passes in such case by implication, (Knoxville Water Co. v. Knoxville, 200 U.S. 22; Blair v. Chicago, 201 U.S. 400, 471; Piedmont Power & Light Co. v. Graham, 253 U.S. 193, 194) we cannot doubt that the permits to the respondents were mere licenses, subject to revocation at any time in the discretion of the Government of the District.
The Saks & Company case, No. 283, is, if possible, even less substantial than the other two. Whatever rights in the streets this respondent has must be derived from the application made in 1884 for a permit to erect a building with adjacent vaults, and from the presumption of a permit, arising from the fact that a vault was constructed and has been in use ever since. No formal permit appears in the record.
A license to Saks & Company to construct and use the vaults, revocable at will, would be sufficient to render them lawful constructions in the street until the privilege should be revoked, and this is all that can fairly be inferred against the public from the facts stated. Without a permit presumed the vault would be a public nuisance, but no grant of a permanent right in the street can be inferred from a mere application and use.
The Court of Appeals gives much greater significance *588 to the concluding words of the acceptances in permits in Nos. 282 and 284 "except as expressed in said permit and the conditions aforesaid," than we can find in them. There are certainly no limitations upon the rights of the public in the permit itself, and the conditions of acceptance here referred to were special agreements, in the acceptances, on the part of the applicants to surrender the vault space upon demand of the Commissioners for special purposes and to an extent designated, which we think not inconsistent with the larger declaration with which the permit was accepted, that the occupation of the vault was a mere accommodation to the receiver of the permit and did not constitute any waiver of any right, title or interest of the public in the streets.
Concluding, as we do, that the respondents were mere licensees, we see no reason for limiting the act of Congress, as the Court of Appeals limited it, to constructions after the date of the act. Such an interpretation of the act would so obviously result in unjust inequality that it should be adopted only under stress of imperative language which we do not find in it.
It results that the judgment of the Court of Appeals of the District will be reversed and that of the Supreme Court affirmed in each of the cases.
Reversed.