## MILLER et al. v. UNITED STATES.
### No. 5423.

Court of Appeals of District of Columbia.
Feb. 29, 1932.

Rehearing Denied March 14, 1932.

Joseph D. Sullivan, of Washington, D. C., for appellants.

Leo A. Rover, Henry H. Glassie, Alex. H. Bell, Jr., and Arthur G. Lambert, all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a condemnation case. Congress by Act of March 4, 1927 (44 Stat. 1422 [20 USCA §§ 191–194]), provided for the establishment of a national arboretum. The act authorized the Secretary of Agriculture to acquire the necessary land by private purchase, condemnation proceedings, or gift. The act forbade the purchase of any land at a greater cost than its assessed value plus 25 per cent., and limited the cost of acquisition of all the land needed to the sum of $300,000. The appropriation was made by Act Dec. 22, 1927 (45 Stat. 14). The secretary, having acquired by purchase a certain portion of the lands desired and being unable to acquire certain other portions except by condemnation, began this proceeding June 26, 1929, four days before the expiration of the time limit of the appropriation. The proceedings were brought conformable to the provisions of the Condemnation Act of March 1, 1929 (45 Stat. 1415 [D. C. Code 1929, T. 25, §§ 100–110o]), which is an act providing for condemnation of land in the District of Columbia for the use of the United States. Section 10 of that act (D. C. Code 1929, T. 25, § 109) provides for an advance taking of the land, but as the provisions of that section were not invoked and as the other sections, which were, contain no more than the usual provisions, which the Supreme Court has held to be due process and not violative of the Fifth Amendment, we do not stop to discuss the

point that the act is unconstitutional because of the right to an advance taking of the property contained in section 10.

A jury was impaneled, and a verdict returned December 3, 1930, fixing the value of appellants' property at $62,407.21. Appellants, on December 24 following, moved the trial court to set aside and vacate the verdict and to enter judgment of dismissal of the petition, among other reasons, because it then appeared that the appropriation had been so depleted in the purchase of lands by the secretary that less than 50 per cent. of the amount necessary to pay the award of the jury remained. The motion was overruled, but on February 5 appellants filed a second motion to dismiss on the ground that the entry of a judgment in relation to other parcels of land still further reduced the available appropriation and obviously left only an inadequate sum out of which the award to appellants might be paid, but the court likewise overruled this motion and entered judgment as to appellants' lands on March 3, 1931. The judgment recited that upon payment of the amount of the award, namely, $62,407.21, to the parties entitled thereto at the date of such payment, title in the land condemned should vest in the United States of America. The United States concede that the Secretary of Agriculture could not expend more than $300,000 in the aggregate, and that the awards made exceed that sum by over $60,000, or, stated otherwise, that the unpaid condemnation awards of approximately $140,000 cannot be paid out of $75,000, the unexpended balance of the appropriation.

The question, therefore, for decision is whether a judgment in a condemnation proceeding for an amount in excess of a definite money limitation fixed in the act authorizing the condemnation, without any limitation of time as to payment, is violative of the Fifth Amendment of the Constitution. The position of the United States is that it is immaterial whether or not at the end of the condemnation proceeding the amount of the appropriation remaining is adequate to cover the award, because the proceeding is conditional and subject to the right of the government to take the property at the awarded compensation, or to abandon the enterprise. They say, in effect, that the judgments entered were conditional judgments providing for the vesting of title upon the payment of compensation, and that compensation may be provided by the United States whenever they are ready to consummate the transaction without regard to whether the time is reasonable or unreasonable; in other words, that the condemnation proceedings having ascertained what is just compensation as of that date and the judgment having confirmed this, the government has in effect an option to consummate the transaction whenever it shall elect to appropriate and pay over the amount of the award. The government concedes that the Secretary of Agriculture cannot acquire land either by condemnation or purchase in excess of the congressional appropriation, but insists that the instant proceeding is not an acquisition of land but a mere ascertainment of the cost of acquiring it, and so it says the condemnation proceeding had at the instance of the secretary is merely carrying out the legislative will requiring him to condemn when the property may not be purchased within the stated amount, and that it is fair to assume that Congress will carry out the purposes of the original act by making an additional appropriation.

Appellants, on the other hand, insist that if the award exceeds the appropriation, the secretary is estopped to continue the proceedings; in other words, that the authority, which confessedly the secretary must have from Congress to start the proceedings, is conditioned upon an award within its terms, and, where the award exceeds the congressional limit, there is no authority at all.

■ We think it may be stated as a general proposition that, in the exercise by the United States of the power of eminent domain, compensation need not be paid, or even finally determined, in advance of the taking, provided reasonable, certain, and adequate provision is made at the time of the taking to ascertain and secure the compensation to be made to the owner. 1 Nich. Em. Dom., § 209, page 631. In Joslin Co. v. Providence, 262 U. S. 668, 677, 43 S. Ct. 684, 688, 67 L. Ed. 1167, the Supreme Court stated the rule as follows: "It has long been settled that the taking of property for public use by a state or one of its municipalities need not be accompanied or preceded by payment, but that the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonably prompt ascertainment and payment, and there is adequate provision for enforcing the pledge."

Under the rule stated, it is insisted on behalf of the United States that all that is required is a recognition of the owner's right to just compensation, a judicial proceeding for its ascertainment, the rendition of a

judgment, and the pledge of the public faith and credit for its payment.

■ We think the position of appellants, that the condemnation proceeding is void whenever it appears that the property cannot be acquired within the limit fixed by the act of Congress, is not sustainable. Precisely the contrary was held by the Supreme Court in Hanson Co. v. United States, 261 U. S. 581, 586, 43 S. Ct. 442, 444, 67 L. Ed. 809, where it was said: "It is not necessary that the exact amount required should be appropriated or that legislation indicate no limitation upon the expenditure for property to be taken."

■ From this, it seems to us clear that where congressional authority exists the government may take the property sought without payment of compensation at the time possession is taken. In such circumstances interest must be paid upon the ultimate award to constitute just compensation (Seaboard Air Line R. R. v. United States, 261 U. S. 299, 305, 43 S. Ct. 354, 67 L. Ed. 664), and the right to the taking grows out of an implied obligation to pay the value. So, we think it follows that a provision in an act of Congress authorizing an executive officer of the government to purchase or condemn at a cost not to exceed a specified amount does not affect the right to a judicial ascertainment of just compensation in a proceeding of condemnation; but the principle on which this is based is that "the owner is protected by the rule that title does not pass until compensation has been ascertained and paid, nor a right to the possession until reasonable, certain and adequate provision is made for obtaining just compensation." Hanson v. U. S., supra.

In the case of the post office building in St. Paul, Minn., an advance taking by the government was upheld on the ground that Congress had specifically authorized the Secretary of the Treasury to acquire the particular property and had provided an appropriation of $480,000 out of which payment should be made. It was held in that case (Commercial P. O. v. United States (C. C. A. 8th) 48 F.(2d) 183) that this was a pledge of the public faith from which it should be assumed that the government would fully and completely discharge its duty to pay just compensation whenever the amount of just compensation was ascertained in a proper proceeding.

The facts in the case we have under consideration differ in some respects from those in the St. Paul case. There, as we have seen,

there was a specific designation of a particular property. Here there was none. There, there was an actual taking, though admittedly a right on the part of the government to abandon the proceedings if the ultimate award should so exceed the limit fixed as not to be satisfactory to the government. Here the secretary is authorized to obtain sufficient lands for the purpose Congress had in view. The quantity or location, except in a general way, is not designated, but there is a congressional admonition that the total cost shall not exceed the amount appropriated, and while, as we have seen, this would not affect the legality of the proceedings or render them void when the amount exceeded the congressional limit, it certainly may not be said that under such circumstances, and particularly where there is no actual taking of the property, there is an express or implied promise to pay or a pledge of the public credit.

The situation therefore is one in which the property of the citizen is earmarked with the option of the government to take it when it shall decide to do so. Since neither title nor possession passes, there is no provision for damages accruing while the government is making up its mind. The result of this is to leave the property in an anomalous position. If the owner uses his property and commits waste or damage in the use and the government ultimately takes it, he is answerable for these acts. If the land contains a residence or building and he spends money on its improvement, he is entitled to no extra compensation for the expenditure. If he destroys a building, he must make good the damage, whereas if he builds one in the ordinary use and occupancy of the property, he is entitled to no indemnity for the expense. It may very well be that in the paramount right of the government growing out of its sovereignty the owner may be subjected to these conditions for a reasonable time, but to continue them indefinitely would, we think, be doing violence to the constitutional provision providing just compensation.

In the cases which we have reviewed, and in all the cases we know about, the right of the government to take private property, where just compensation is not paid at the time of the taking, is grounded on the pledge of the public faith and credit to a reasonably prompt ascertainment of just compensation and adequate provision for its payment.

■ In this case the record shows that the proceedings were begun in June, 1929, and were completed by an award of the jury in

December, 1930, followed by a final judgment in March, 1931. The record further shows that, at the time of the award, there was no existing appropriation out of which the same could be paid, and it likewise shows that the attempt of the secretary to secure an additional appropriation from Congress sufficient to acquire all the land, believed by him to be necessary in the project, was, in February, 1931, defeated by the rejection by Congress of a bill to that end. Practically a year has elapsed since the judgment was entered, and admittedly no appropriation has been had, nor is a bill providing one pending, and under these circumstances we may take judicial notice of the fact that in the present determined policy of economy, which supervening conditions have made imperative (A., T. & S. F. R. R. v. U. S. et al., 52 S. Ct. 146, 76 L. Ed. ——, decided January 4, 1932), Congress may not be expected to give preference to appropriation acts for purposes of research and education concerning tree and plant life, and therefore are face to face with the necessity of deciding whether, as is contended on behalf of the government, the "judicial option" to acquire the property, growing out of the award in the condemnation proceedings, is indefinite in point of time, and whether, if it is, compensation fixed as of conditions obtaining two or three or four years prior to the taking must be held to be just compensation within the provisions of the Fifth Amendment as of the time of the taking.

We do not think such a position should be sustained. On notice to the trial court of the deficiency of the appropriation, or the lack of appropriation, the government should have been required within a reasonable time either to abandon the proceedings or else to take steps to pay the award. It ought not, we think, to have all the benefits of the award without any corresponding obligation to comply with its terms. If it could be held that in consenting to the entry of the judgment on the award the United States thereby elected to take the property and waive the right of abandonment and equally thereby to pledge the public faith and credit, the case would be different, but we know of no decision which so holds, and here, it is agreed, the secretary may not take the property because Congress, by refusing to appropriate the additional money has, at least impliedly, forbade his doing so, and it clearly appears he has no purpose to do so until Congress does provide the money. This, we think, is more consistent with abandonment than with ratification out of which a pledge to pay might be assumed (see District of Columbia v. Thompson, 281 U. S. 25, 50 S. Ct. 172, 74 L. Ed. 677), and so we have neither an express pledge nor a taking, out of which an implied pledge to pay would arise, and so a case in which, if the government is correct, the property may be taken whenever the appropriation is made, without regard to its then value, and this, we think, is repugnant to the Constitution.

The judgment of the lower court is, for the reasons stated, reversed and the cause remanded, with instructions to set aside the judgment and to enter a judgment dismissing the proceedings as to appellants.

Reversed.