Booth, Ghief Justice,
delivered the opinion of the court:
This case was heard and submitted upon defendant’s demurrer to plaintiff’s petition.
Plaintiff is a Virginia corporation, successor in interest and title to the property and franchise of the Washington, Alexandria & Mt. Vernon Electric Railway Company, a Virginia corporation organized in 1892. The latter corporation was by an act of Congress approved August 23, 1894 (28 Stat. 494), granted the right to construct and operate its line of street railway into the District of Columbia, along and upon certain specified streets, as set forth in the act.
Subsequently the route to be taken by the corporation in the location of its tracks was changed, and at the time of this •controversy the present plaintiff’s double tracks crossed the Highway Bridge, passing through Potomac Park to Fourteenth Street NW., thence north to B Street NW. (now Constitution Avenue), thence by a single track loop east on Constitution Avenue to 13% Street, thence north on 13% Street to D Street, thence east on D Street to plaintiff’s terminal at 12th and Pennsylvania Avenue, thence south on 12th Street to C Street NW., thence west on C Street NW., to 14th Street, and thence south on 14th Street to connect with its double tracks at 14th Street and Constitution Avenue.
No question is raised as to plaintiff’s title or ownership of the property involved, nor to the fact that the company was in possession of the tracks and actively operating its railroad, and we recite the stated route of plaintiff’s railroad tracks in order to disclose that this case grows out of what happened to its tracks in the “ loop ” described, i. e., the line of tracks which enabled the plaintiff to reach its terminal from the 14th Street tracks and return thereto.
The petition states that by an act of Congress approved May 25, 1926 (ch. 380, 44 Stat. 630), the Secretary of the Treasury was authorized to provide suitable building sites for the location in the District of Columbia within the area between Pennsylvania Avenue and Constitution Avenue and between 6th Street and 15th Street NW., of proposed new Executive department buildings.
The above act, it is stated, authorized the Secretary “ to acquire, by purchase, condemnation, or otherwise, such *706 sites * * * as be may deem necessary,” and that in the event the construction of said buildings, in the opinion of the Secretary, required the utilization of contiguous squares as sites therefor, authority was given for closing and vacating such portions of streets between such squares and such alley-ways as intersected said streets, and if closed and vacated they should become parts of the chosen sites. On January 13, 1928, $26,000,000 was appropriated and made available to the Secretary to carry out the provisions of the above act.
In December, 1931, the plaintiff was notified by the Public Utilities Commission of the District of Columbia, acting for the Secretary of the Treasury, that plaintiff would in all probability be ordered to vacate and surrender its terminal facilities and track structures within this described area, and thereafter following negotiations and requests upon the part of the plaintiff for substituted facilities and rights the Secretary of the Treasury issued and served upon the plaintiff the following order :
“The tracks for the Mount Vernon, Alexandria and Washington Railway occupy the above-named streets, which have been made parts of the sites of the new Post Office Department Building, the Interstate Commerce and Labor Department Buildings, and the auditorium connecting the Interstate Commerce and Labor Department Buildings.
“Notice is hereby served upon the Mount Vernon, Alexandria and Washington Railway Company to remove or abandon the tracks of said company in the streets above designated on or before January 15, 1932. Your acknowledgment of the receipt of this communication is requested.
“ Respectfully,
“(Signed) A. W. MelloN,
“ Secretary of the Treaswry.”
The petition then concludes, omitting argumentative and irrelevant allegations, with a statement that despite plaintiff’s efforts to procure suitable terminal and trackage facilities by application to the Public Utilities Commission which met with failure, and in opposition to its franchise rights the streets were vacated and closed by the defendant, resulting-in the termination of plaintiff’s operation of its railroad, notwithstanding its efforts to continue operation. The value *707 of the franchise alleged to have been taken is placed at $732,-000 and damages resulting from its taking at $100,000, a total claim of $832,000.
The plaintiff argues that under the facts it is entitled to just compensation for the taking of its franchise under a condemnation statute, viz., the act of May 25, 1926, as amended by the act of January 13, 1928. The act of May 25, 1926 (44 Stat. 630) reads in part as follows:
“ * * * In all cases where the construction of buildings in the District of Columbia, under the provisions of this act, requires the utilization, in the opinion of the Secretary of the Treasury, of contiguous squares as sites thereof, authority is hereby given for closing and vacating such portions of streets as lie between such squares and such alleys as intersect such squares, and the portions of such streets and alleys so closed and vacated shall thereupon become parts of such sites. * * * ”
The amendatory act of January 13, 1928 (Ch. 9, 45 Stat. 51, 52), is in part as follows :
“ * * * acquire, by purchase, condemnation, or otherwise, all the lands obtainable with the funds that may be appropriated, including buildings and other structures, included within the triangle bounded by Pennsylvania Avenue and B Street, extending from Fifteenth Street to Sixth Street Northwest, and reservations A, B, C, and D, except property owned by the United States or the District of Columbia as such lands appear in the records of the office of the surveyor of the District of Columbia.”
The facts reveal an unusual situation. The plaintiff’s physical property was not expropriated. The defendant had no use for it.
Plaintiff’s case is predicated upon the acts of May 25, 1926, and January 13, 1928 (supra) ; these statutes, it is asserted are condemnation laws and therefore the case is one founded upon the Constitution (section 145, Judicial Code) and does not involve an implied contract in fact, as held by the Supreme Court in Tempel v. United States, 248 U. S. 121. In other words, if we correctly apprehend the plaintiff’s position, it is an assertion that the facts alleged demonstrate that the Secretary of the Treasury was taking-plaintiff’s property rights for a public purpose under the *708 acts enppowering the official to do so, and just compensation must be paid therefor.
.The order of December 8, 1931, emanating from the Secretary, is not susceptible, we think, of a construction that condemnation was intended; assuredly its terms do not admit so much. The plaintiff is notified “ to remove or abandon ” its tracks in the streets named and to do so on or before January 15, 1932. The employment of terms such as the order contains indicates a peremptory direction to remove, or, if so desired, abandon obstructions which the Secretary finds as an impediment to the intended use of the streets. The language indicates no intention upon the part of the Secretary to acquire or take over property rights, and no procedure of any character was instituted in any court, no agreement to pay ever consummated; nothing was done except to order removal or abandonment.
Therefore, under the facts, if condemnation of the property rights of the plaintiff follows from what was done it must be attributed to the consequences and legal effect of the order and not to its terms. The plaintiff insists that what was done amounts to a taking of its franchise, a property right acquired under the act of 1894 (supra). With this contention we are unable to agree. The facts, we think, disclose in any event no more than a resulting loss of the privileges and rights conferred upon the plaintiff by the act of 1894. The right and authority of the Secretary to close the streets have not been traversed, and the situation resulting from the exercise of such a right is incidental to the same. The streets were public streets of the District of Columbia and within the control of Congress, and loss occasioned by their closing is consequential. Bedford v. United States, 192 U. S. 217; Mitchell v. United States, 287 U. S. 341. This court is without jurisdiction under the cases cited, or where the loss suffered is incidental to exercise by the Government of a lawful right.
The case in this respect resembles closely the case of Omnia Commercial Co. v. United States, 261 U. S. 502, 511, a case where the facts disclosed governmental interference, as the plaintiff states, with an executory contract, but obviously a case where the Government, acting within the scope of its *709 authority, by its acts precludes a manufacturer from fulfilling a contract with a third person. The Supreme Court said: “As a result of this lawful governmental action the performance of the contract was rendered impossible. It was not appropriated, but ended.” In the Omnia ease as here the plaintiff was insisting that its contract had been requisitioned. The Supreme Court held that the loss suffered was clamm.v/m, absque injuria.
Innumerable precedents are available, too many to cite, establishing the rule that in order to entitle a claimant to an award of just compensation for a taking of private property for a public use by the Government the facts must reveal an appropriation — a taking of the same — i. e., the Government in the exercise of the right of eminent domain acquires something it did not theretofore possess. The cases uniformly hold that, property rights may be destroyed, rendered useless and valueless as a result of lawful governmental action without involving a taking.
The Government in this case was legislating for the purpose of setting up an extensive public buildings program, and the buildings were to be located within a certain area. Within that area private property existed which under the law cordd not be taken save by purchase, agreement, or condemnation. Also within the same were public streets and alleyways belonging to the Government and the Congress authorized their closing when, essential, and when closed, as they lawfully were, the consequences of such a lawful act, the incidental losses suffered by individuals or corporations, were remediless.
Aside from what has been said and of possibly more vital importance is the fact that section 25 of the act of 1894 (28 Stat. 494) granting the plaintiff the right to use the streets, expressly provided: “That this act may at any time be altered, amended, or repealed by the Congress of the United States.” We need not discuss the origin of provisions of this character. It is well known. The single issue presented is as to whether the acts of 1926 and 1928 {supra) operated to repeal, modify, or amend plaintiff’s franchise. Mr. Justice Adkins, in a written opinion, after reviewing the authorities upon the subject, decided that the effect of the acts of *710 1926 and 1928 did to the extent noted repeal, alter, or amend plaintiff’s franchise, and with that opinion filed October 21, 1931, in the Supreme Court of the District of Columbia in the c.ase of Mt. Vernon, Alexandria & Washington Railway Co. v. Andrew Mellon, Secretary of the Treasury, we agree. See also Louisville Bridge Co. v. United States, 242 U. S. 409.
The demurrer will be sustained and the petition dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and GreeN, Judge, concur.