**POTOMAC ELECTRIC POWER CO. v. UNITED STATES.***
No. 6562.

United States Court of Appeals for the District of Columbia.
Decided May 25, 1936.

*Writ of certiorari denied 57 S. Ct. 27, 81 L. Ed. —.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

S. R. Bowen and H. W. Kelly, both of Washington, D. C., for appellant.

Henry H. Glassie, of Washington, D. C., for appellee.

VAN ORSDEL, Associate Justice.

On December 28, 1934, the United States filed its petition in the Supreme Court of the District of Columbia, seeking the condemnation of lot 805, square 144, on which was located substation 19 of the defendant, Potomac Electric Power Company. Defendant company answered, setting forth that established in substation No. 19 were electrical fixtures for the distribution of electric energy for heat, light, and power to many government buildings and to the general public in the vicinity of the substation; that certain of its property, used as an integral and essential part of its electrical system and operated through substation 19, "will be seriously affected, damaged, completely destroyed or rendered useless by the taking of the property of said defendant described in the petition herein."

On April 9, 1935 the United States filed a declaration of taking under section 10 of

the Act of March 1, 1929 (45 Stat. 1415, 1417, 40 U.S.C.A. c. 7, § 370, D.C.Code 1929, T. 25, § 109), in which it was declared that defendant's property, among others, was taken in fee simple absolute, and that the United States deposited the sum of $19,500 in the registry of the court, as the estimated just compensation for defendant's property. The government then applied for a rule to show cause why defendant company should not vacate the premises on or before May 15, 1935.

Defendant answered the rule, setting forth substantially the same grounds of defense contained in its answer to the original petition, with the additional averment that the petition failed to show express statutory authority for the taking of defendant's property or for the closing of the alleys and streets occupied by defendant's conduits, cables, and appurtenances, used in connection with its substation, and failed to give any adequate assurance that there would be prompt ascertainment and payment of full and just compensation. It was further alleged that the taking of the substation would "injuriously affect and materially interfere with the distribution of direct current within the area now served by said substation"; that the estimated cost of reproduction now of the said property, after deducting for depreciation, was $225,430, and the original cost of the property was $183,471; that the sum of $19,-500, deposited in the registry of the court, was insufficient to afford defendant just compensation; and that the time asked for vacation of the premises was too short to permit defendant to vacate and find some other way or ways of serving the territory, for which at least six months would be required.

On May 3, 1935 the court passed an order requiring the defendant company to surrender possession of the premises to the United States on July 1, 1935, and ordering that the defendant pay to the United States for the use and occupation of these premises, from April 9, 1935, until the date of the surrender of possession, 6 per cent. per annum on the sum deposited as the estimated compensation for the land involved.

On May 21, 1935, the condemnation jury returned its verdict awarding to defendant company the sum of $23,167 for "Lot 805 in Square 144, improved by premises known as Substation 19 of the Potomac Electric Power Company in the City of Washington, District of Columbia, and all easements, rights, privileges and appurtenances belonging or appertaining to the same, and all right, title and interest of the owner of said lot in and to the public alley abutting the same."

Objections and exceptions to the verdict were duly filed, and the court entered a judgment overruling them and ratifying and confirming the verdict. From the judgment this appeal was taken.

Considering first the contention of defendant that there was no statutory authority for the present proceeding, it will be observed that the Act of March 1, 1929 provides: "Whenever the head of any executive department, * * * hereinafter referred to as the acquiring authority, has been, or hereafter shall be, authorized by law to acquire real property in the District of Columbia for the construction of any public building or work, * * * such acquiring authority shall be, and hereby is, authorized to acquire the same in the name of the United States by condemnation under judicial process whenever in the opinion of such acquiring authority it is necessary or advantageous so to do; and in every such case the Attorney General of the United States, upon the request of such acquiring authority, shall cause a proceeding in rem for such condemnation to be instituted in the Supreme Court of the District of Columbia, holding a special term as a district court of the United States, which court is hereby vested with jurisdiction of all such cases of condemnation with full power to hear and determine all issues of law and fact that may arise in the same." Section 1 (40 U.S.C.A. § 361, D.C.Code 1929, T. 25, § 100).

The Secretary of the Treasury, the "acquiring authority" at whose request this proceeding was instituted, claimed authority by virtue of the foregoing act. The petition also set out section 201 of the National Industrial Recovery Act, 48 Stat. 195, 200 (40 U.S.C.A. § 401), under which the President was authorized to create a Federal Emergency Administration of Public Works, the powers of which were to be exercised by an Administrator appointed by the President. Section 202 of the same act (40 U.S.C.A. § 402) provided that the Administrator, under direction of the President, should prepare a comprehensive program of public works to include, among other things, "any projects of the character heretofore constructed or

carried on either directly by public authority or with public aid to serve the interests of the general public." Section 203 (a) of the act (40 U.S.C.A. § 403 (a) authorized the President, through the Administrator or such other agencies as he might designate or create, "to construct, finance, or aid in the construction or financing of any public-works project included in the program prepared pursuant to section 202 [section 402]" and "to acquire by purchase, or by exercise of the power of eminent domain, any real or personal property in connection with the construction of any such project." Section 220 of the act (40 U.S.C.A. § 411) authorized the appropriation of the sum of $3,300,000,000 for the purpose of carrying out the act, which sum was appropriated in the Fourth Deficiency Act, fiscal year 1933, 48 Stat. 274, 275.

It was further alleged in the petition that, in pursuance of the act, Harold L. Ickes was appointed Administrator; that he had prepared the program of public works provided for in the act, which included the construction of a new Department of Interior building to be erected on squares 144 and 145, in the city of Washington; that the acquisition of those squares, either by purchase or by condemnation proceedings, was necessary for the construction of said building and its approaches; that the Secretary of the Treasury had been designated as the acquiring agency and had been allotted $11,000,000 and authorized to apply as much of that amount as was necessary for the acquisition of all privately owned lands in those squares. This action was approved by the President, and the Attorney General was requested by the Secretary of the Treasury to institute appropriate condemnation proceedings for the acquiring of the property within the squares designated.

We think the authority of the Secretary of the Treasury, under the National Industrial Recovery Act and the acts of the Federal Administration of Public Works established thereunder, to acquire, through the power of eminent domain, the property of the defendant, cannot be successfully challenged, nor can the authority of the President, who was empowered to have prepared "a comprehensive program of public works" which was to include "any projects of the character heretofore constructed or carried on * * * directly by public authority," and to acquire by eminent domain any real property

in connection therewith, be successfully assailed. It can undoubtedly be sustained, in so far as it relates to the erection of a new Department of Interior Building, which is a project of the character heretofore carried on by public authority. Particularly must this authority be sustained when viewed in connection with the Act of Congress of May 25, 1926, 44 Stat. 630 (40 U.S.C.A. § 341 et seq.), wherein the Secretary of the Treasury was authorized and directed to acquire sites in the District of Columbia and erect thereon buildings for suitable accommodation of the executive departments of the government, within a restricted area south of Pennsylvania avenue, which area was enlarged by the Act of January 13, 1928, 45 Stat. 51 (40 U.S. C.A. §§ 341 note, 348), and further extended by the Act of March 31, 1930, 46 Stat. 136.

In view of the provisions of these acts, the Secretary of the Treasury had undoubted authority to acquire, within the area designated, the site for the Department of Interior Building; it being unnecessary for Congress to describe particularly the exact land to be taken. Chappell v. United States, 160 U.S. 499, 510, 511, 16 S.Ct. 397, 40 L.Ed. 510. He was likewise authorized to proceed with the acquisition of the land in question under the allotment of the necessary funds from the Public Works Administration. However, we base our holding on this point exclusively on the authority vested in the Administrator of Public Works to divert money from the appropriation under the National Industrial Recovery Act for the purpose of acquiring a site for this public building within the designated area in the city of Washington.

It is also contended by counsel for defendant that the Act of March 1, 1929 "does not conform to constitutional requirements," in that "it does not provide for the payment of damages to the owner of the land and the vesting of title in the United States contemporaneously." The validity of this act has twice been challenged in this court. Miller v. United States, 61 App.D.C. 58, 57 F.(2d) 424; Lee v. United States, 61 App.D.C. 153, 58 F.(2d) 879, 880. In each of these cases the validity of the act was upheld. In the Lee Case we had before us for determination the question whether section 10 of the Act of March 1, 1929 (40 U.S.C.A. § 370, D.C.Code 1929, T. 25, § 109) was constitu-

tional. The court, speaking through Mr. Justice Groner, said:

"We do not understand it is contended by appellants that the Fifth Amendment requires that the taking of private property for public use by the United States must be accompanied or preceded by payment. The contrary is now settled law. Joslin Mfg. Co. v. Providence, 262 U.S. 668, at page 677, 43 S.Ct. 684, 67 L.Ed. 1167. But appellants say that this right exists only in a case in which the public faith and credit are pledged to a prompt ascertainment and payment of just compensation and there is superadded reasonable provisions for enforcing the pledge. Hence, they argue that, unless the money is already appropriated by Congress and the fund is under the control of the head of one of the executive departments of the government, a judgment of a court of the United States is not of itself sufficient, since Congress may or may not appropriate the money out of which the judgment can be paid.

"We cannot accept this view, nor are we willing to admit the premise on which it is laid. As we noticed, Congress authorized the Secretary of the Treasury to condemn certain designated property in Washington City, appropriated funds for that purpose, and authorized the payment into court of so much of the appropriation as the Secretary thought proper as the initial payment—i. e., the estimated value—on account of the taking, reserving the right of the owner of the property taken to the ascertainment of just compensation in a court of proper jurisdiction, to be followed, when ascertained, by judgment against the United States with 6 per cent. interest until paid. These provisions, when carried into effect, followed by the taking of the property, amount to a pledge of the public faith and credit, and the judgment rendered in such proceeding is as binding on the United States as a judgment in a proper case would be upon the humblest individual in the land. That it is not enforceable by execution and levy as in the case of a private person does not impair its validity. The taking being duly authorized by Congress, there arises, upon the happening of that event, at once a pledge to pay, and the pledge becomes complete and definite when the ascertainment of just compensation has been duly had and a judgment entered therefor. In such a case it is unthinkable that Congress will not, with appropriate speed, provide the necessary money to discharge the judgment and interest to the date of payment, and this is all the Fifth Amendment requires in a case in which the sovereign is asserting the power of eminent domain. Crozier v. Fried Krupp Aktiengesellschaft, 224 U.S. 290, 306, 32 S.Ct. 488, 56 L.Ed. 771. And see our discussion of this subject generally in Miller et al., Trustees, v. United States, 61 App.D.C. 58, 57 F.(2d) 424, decided February 29, 1932."

This decision, we think, completely disposes of defendant's contention in this respect, since even if the authority to allot funds from the Public Works Administration for the payment of the property condemned were found to be unauthorized, the authority still exists under the earlier condemnation acts to proceed and obligate the government for the payment of the property taken.

Counsel for defendant further contend that certain of its electrical machinery, together with its accessory equipment, located in substation 19, was part of the realty, and that it was error to exclude testimony concerning its value. The machinery consisted of a 35-ton generator set, which rested upon a concrete foundation specially built for it. The foundation walls, about 2 feet thick, extended below the floor under the machine for about 4 feet. The foundation was poured contiguous with the building floor and flush with the surface thereof. In this massive concrete foundation was a pit for the invert of the machine, which extended below the base, and also to accommodate the heavy cables and wiring which came in from the switchboard and transformer. Accessory to this generator set was a starting compensator, which was bolted to a small concrete pad.

There was also a 1,000 kw converter, weighing 79,000 pounds, with an associated transformer weighing 19,600 pounds. This converter rested upon a concrete foundation, and the transformer rested upon a structural steel framework which was bolted to I-beams set in the floor and inclosed with fireproof material.

There was also a 500 kw rotary converter, weighing 71,750 pounds, with an associated transformer weighing 12,200 pounds. Both of these machines were attached to the floor by cement poured between the surface of the floor and the bottoms of the machines.

These three pieces of heavy machinery, together with their accessory parts, had previously been installed and used in other of its substations by defendant company, and were finally removed and set up in substation 19. In Futrovsky v. United States, 62 App.D.C. 235, 236, 66 F.(2d) 215, 216, we said: "The rule applicable to so-called fixtures in buildings taken in federal condemnations is that, if they can be removed without substantial injury either to the real estate or to the fixtures, they remain personalty and need not be taken as part of the realty."

It does not appear from the record that any injury would result to these machines from their removal. Neither does it appear that any substantial injury would be occasioned to the real estate, and this is emphasized by the fact that the machinery had been used in other substations before its removal to substation 19.

As to the equipment in the substation which the jury was permitted to consider as part of the realty, the court instructed them that "they should consider, as forming part thereof, the items concerning which the witness Brown gave testimony as to reproduction cost, namely, the reinforced concrete boxes serving as bases for the machinery, the conduits within the building, the unit described as the electrical structure, the centrifugal blower and motor, structural steel and pipe supports, grounding system, aggregating the sum of $7,629.00." We think that this instruction included all the equipment which could be considered as even remotely forming part of the realty. All the other equipment was installed as a necessity of defendant's business of generating and distributing electrical current. It cannot be considered an improvement of the real estate, since it could be removed without substantial injury to itself or the realty, but must be considered personal property.

Defendant next contends that its distribution system, consisting of conduits, cables, manholes, etc., lying in the public streets and alleys beyond the bounds of lot 805, was "taken" within the meaning of the Constitution, and that defendant was entitled to just compensation therefor. The distribution system, exclusive of that portion lying in the public alley in square 144, and in D street, which separated squares 144 and 145, was not physically encroached upon by this condemnation. It is insisted, however, that the taking of lot 805 renders the distribution system valueless and is equivalent to a taking thereof. The government, on the other hand, contends that defendant is not deprived of any interest in real property, since it can assert no such interest in the public streets, and that its personal property, conduits, cables, wires, etc., remain the property of the company, placed in the public streets by permission and in complete subordination to the exercise by the United States of its lawful governmental powers, among which is the power to expropriate such real property as may be necessary for the carrying on of the functions of government. ██ The fee simple of the streets in the city of Washington is in the United States. Van Ness v. Mayor, etc., of Washington, 4 Pet. 232, 285, 286, 7 L.Ed. 842. And Congress has full authority to regulate the disposition and use which shall be made of these streets. Baltimore & O. R. Co. v. Fitzgerald, 35 App.D.C. 116, 122. It follows that the permits issued to defendant company by the District commissioners to lay their conduits, cables, and wires conveyed no estate in the streets and alleys. The permission granted amounted to a mere license, revocable at will, to use the streets and alleys for certain purposes, and the personal property placed therein by defendant remained personalty. Detroit United Ry. v. City of Detroit, 229 U.S. 39, 33 S.Ct. 697, 57 L.Ed. 1056; District of Columbia v. R. P. Andrews Paper Co., 256 U.S. 582, 587, 41 S.Ct. 545, 65 L.Ed. 1103. The impairment of defendant's distribution system was merely incidental to the direct taking involved in the acquisition of its real estate. Northern Transportation Co. v. Chicago, 99 U.S. 635, 642, 25 L.Ed. 336.

There is a clear distinction between the instant case and the cases relied upon by defendant, of which Pumpelly v. Green Bay Co., 13 Wall. 166, 188, 20 L.Ed. 557, and District of Columbia v. Prospect Hill Cemetery, 5 App.D.C. 497, are illustrative. In the Pumpelly Case and similar cases, there was a physical invasion of the owner's property; in the present case there was no encroachment upon defendant's distribution system (except in D street and in the alley in square 144). In the Prospect Hill Cemetery Case and in cases analogous thereto, the land involved was a single, entire tract, part of which was physically taken, and the remainder of which was damaged by such taking; in the instant case all of lot 805, which defendant held in

fee simple, was taken, and the damage incident to the taking fell upon personal property which it had been permitted to install in the public streets and alleys, subject to the exercise of the right of eminent domain and all other legitimate governmental powers.

A somewhat different situation is presented as to the equipment installed in the public alley in square 144, and in D street, which separated squares 144 and 145. This equipment was physically taken, because of the closing of the alley and the street, but this gave rise to a claim which is not properly involved in this condemnation proceeding. If valid, it constitutes a separate and distinct cause of action which defendant may prosecute in the Court of Claims. Mt. Vernon, A. & W. Ry. Co. v. United States, 75 Ct.Cl. 704.

The further contention of defendant that it was entitled to show the cost of relocating the electrical machinery, conduits, cables, etc., cannot be sustained, since it is generally held that the cost of relocating personal property on land taken under the power of eminent domain is not a proper element of damage. Joslin Co. v. Providence, 262 U.S. 668, 676, 43 S.Ct. 684, 67 L.Ed. 1167.

The judgment is affirmed, with costs.