UNITED STATES of America,
Petitioner-Plaintiff,

v.

CERTAIN PROPERTY LOCATED IN the BOROUGH OF MANHATTAN, CITY, COUNTY AND STATE OF NEW YORK, consisting of all of Block 887 and bounded by East 31st and 32nd Streets, and Lexington and 3rd Avenues, and 193 Realty Corp., et al., Defendants.

United States District Court
S. D. New York.

Dec. 12, 1963.

Supplementary Opinion Jan. 22, 1964.

500

Samuel Goldstein & Sons, New York City, for Steven Goodstein and Martin H. Goodstein (Damage Parcel 11); Samuel Goldstein, Arthur D. Goldstein, New York City, of counsel.

Harry T. Dolan, Sp. Asst. to the Atty. Gen. of the United States, Brooklyn, N. Y., for United States.

DIMOCK, District Judge.

Steven Goodstein and Martin H. Goodstein, claiming to be the owners of the fee simple of the premises described as Parcel No. 11 in this condemnation proceeding, which are subject to certain mortgages, petition for the payment of sums deposited in the registry of this court for the use and benefit of those entitled thereto.

The court on its own motion raised the question of its jurisdiction to act in the proceeding. Doubt of the court's jurisdiction arises from the fact that the first amendment of the complaint and the declaration of taking in this case describe the property to be taken as a fee simple "excepting, however, tenants' removable trade fixtures". The property to be acquired is limited by Section 258a, Title 40, United States Code, under which the proceeding is brought, to an "estate or interest in land." The question raised is whether a fee simple excepting tenants' "removable trade fixtures" is an interest in land.

First of all, I must determine just what the term "removable trade fixtures" comprises. The Court of Appeals for this Circuit, in a recent opinion written by Judge Friendly, United States v. Certain Property, etc., 2 Cir., 306 F.2d 439, divided tenants' equipment into three classes and described the status of each class under New York law. On page 450 of 306 F.2d he said:

"Some fixtures, even though annexed by the tenant, are 'distinctively realty' and therefore become the property of the landlord; others which are removable without material injury to the freehold remain the property of the tenant even though they are classified as realty because they are severely damaged or lose substantially all of their value on severance."

In his instructions for dealing with fixture claims, Judge Friendly said, 306 F.2d page 453

"In each case the court should ascertain what property claimed by the tenant, existing on the date of the taking, fell within the category which New York regards as neither being so 'distinctively realty' as to belong to the landlord nor as being removable with such little difficulty or loss in value as to have retained its personal character."

Judge Friendly thus distinguished between fixtures distinctively realty and fixtures which are removable. Removable fixtures belong to the tenant but are compensable only if they are removable only with such difficulty or loss in value as to have lost their personal character.

The description in the amendment of the complaint and notice of taking, insofar as it excepts the property not taken, seems on inspection to cover the two classes of equipment described by Judge Friendly as belonging to the tenant, i. e., first, property not distinctively realty but removable by the tenant but whose removal would be so difficult or pecuniarily damaging as to class it as compensable and, second, property removable with such little difficulty or loss in value as to have retained its personal character.

A very similar description in a declaration of taking has, however, been construed to except only property removable with such little difficulty or loss in value as to have retained its personal character. In United States v. Certain Land, etc.,

D.C.S.D.N.Y., 69 F.Supp. 815, at page 821, Judge Bright said:

> "Being such there can be no recovery here for any taking of personalty; only the realty, with all buildings and improvements which are part of the realty, 'except removable fixtures' are condemned. Petition paragraphs II and VI. As noted by Judge Cardozo in Jackson v. State of New York, 213 N.Y. 34–36, 106 N.E. 758, L.R.A.1915D, 492, Ann.Cas.1916C, 779, the appropriation has been 'qualified when made;' by expressly excepting the personalty."

The declaration of taking in the instant case differs from that held by Judge Bright to except only personalty only in that the words "tenants'" and "trade" have been added in the one now in consideration. Slight as these changes are, I cannot say, as Judge Bright did, that only personalty is excepted. If the exception "tenants' trade fixtures" was limited to personalty there would be a negative implication that landlords' trade fixtures were not excepted and that the landlords' personalty was being taken. Such a construction would not only be foolish but the taking of personalty is not permitted under Section 258a of Title 40.

There is thus no doubt that the Government is attempting to take the land and buildings except so much of the buildings as constitute tenants' compensable trade fixtures. Can it be said that what the Government is attempting to take is an "interest in land" within the words of Section 258a? The interest in land contemplated by the statute is unquestionably an interest recognized by the law of the state where the land lies. Does the law of New York recognize as interests in land the right of A to the soil and one part of the building and the right of B to another part of the building supported by A's part? The answer is yes.

In Mott v. Palmer, 1 N.Y. 564, at page 570, Judge Ruggles, in disposing of a case involving the ownership of a fence on real property, said:

> "But the earth within specified boundary lines may be owned by one man, and the buildings, trees and fences standing on it by another. A man may have an inheritance in an upper chamber, although the title to the lower buildings and soil be in another. (Shep. Touch, 206; 1 Inst. 48,b.) And it is a corporeal inheritance. (10 Vin. 202.) Buildings and fixtures erected by a tenant for the purposes of trade belong to him, and are removable without the consent of his landlord."

The law is the same in other jurisdictions. Fay v. Prentice, 1 C.B. 828, 840; Harris v. Ryding, 5 M. & W. 60, 71, 76; Humphries v. Brogden, 12 Q.B. 739, 743; Cheeseborough v. Green, 10 Conn. 318; McConnel v. Kibbe, 33 Ill. 175; Ottumwa Lodge v. Lewis, 34 Iowa 67; Loring v. Bacon, 4 Mass. 575; Badger Lumber Co. v. Stepp, 157 Mo. 366, 57 S.W. 1059; New Jersey Zinc Co. v. New Jersey Franklinite Co., 13 N.J.Eq. 322, 341, reversed on other grounds, 15 N.J. Eq. 418.

While it is thus possible to have separate legal estates in the building and in the trade fixtures, there remains the question whether a condemnor can constitutionally take the estate in the building without taking the estate in the trade fixtures. That question has been raised in the New York courts and not answered.

In Jackson v. State of New York, 213 N.Y. 34, 35, 106 N.E. 758, L.R.A.1915D, 492, Judge Cardozo said:

> "It is intolerable that the state after condemning a factory or warehouse, should surrender to the owner a stock of secondhand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of secondhand articles; attached to a going plant, it may produce an enhancement of

value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value. An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and so it has frequently been held. Matter of City of N. Y., 118 App.Div. 865, 103 N.Y.Supp. 908, affd., 189 N.Y. 508, 81 N.E. 1162; Matter of Mayor, etc., of N. Y., 39 App.Div. 589, 57 N.Y.Supp. 657; Phipps v. State of N. Y., 69 Misc. Rep. 295, 127 N.Y.Supp. 260; Allen v. City of Boston, 137 Mass. 319. We say 'unless qualified when made,' because we do not need at this time to decide whether the state, in giving notice of appropriation, may except fixtures that would retain, after severance from the soil, a substantial value as personalty, and thus restrict the payment to the difference between the value of the detached articles and the value added to the building when they were used in connection with it. Price v. Milwaukee [St. P.] R. R. Co., 27 Wis. 98; Philadelphia & Reading R. Co. v. Getz, 113 Pa. 214, 6 Atl. 356."

In Matter of City of New York (Allen St.), 256 N.Y. 236, at pages 243–244, 176 N.E. 377, at p. 379, Judge Lehman said:

"In many jurisdictions the appropriation of real property may be qualified by the exclusion of structures upon the land. Then the problem is different. In such case compensation is paid for what is taken and, sometimes, consequential damages, caused by the taking, to property excluded therefrom. Then payment may be restricted 'to the difference between the value of the detached articles and the value added to the building when they were used in connection with it.' Jackson v. State, supra. In such jurisdictions the correct rule to be applied may

be that, as to fixtures of a tenant not taken, 'the increased value of the premises for rent in consequence of the putting in of such fixtures and improvements may properly be considered in computing the damages to the leasehold estate.' Pause v. City of Atlanta, 98 Ga. 92, 105, 26 S.E. 489, 493. Of course, where a tenant receives damages for the destruction of the value of the leasehold estate as increased by the presence of the fixtures and still retains his property in the fixtures, he has full compensation for any injury he has suffered. The decisions like Allen v. City of Boston, 137 Mass. 319, Emery v. Boston Terminal Co., 178 Mass. 172, 59 N.E. 763, in Massachusetts, must be read in the light of the statutes in force in that state (Massachusetts General Laws, 1921, chapter 79; [§ 13] Massachusetts Public Statutes 1882, c. 49, § 9), which permit the exclusion of structures, fixtures, and even trees from the appropriation of the land to which they are annexed, and authorize the award of consequential damages when excluded. So read, these cases have no relevancy to the question presented here, where the appropriation of the real property has been subject to no qualifications."

Similarly in United States v. Seagren, 60 App.D.C. 183, 50 F.2d 333, at page 335, 75 A.L.R. 1491, Justice Hitz said:

"Can the United States, exercising its right of eminent domain, change the essential character of structures from realty, which it must pay for, to personalty, which it may order removed without payment, because a landlord and tenant, dealing upon private consideration of reciprocal interest and expenditure, have years before agreed as between themselves that upon their termination of their lease the tenant might remove his structures?"

■ I have no doubt that if no compensation whatever were paid to the

tenant whose fixtures are in contemplation of law not taken, the exclusion would constitute a violation of the Fifth Amendment. While the fixtures of the tenant are not taken, the Government, by taking everything else, does take the tenant's leasehold interest under which the tenant is entitled to subjacent support of his fixtures. For the deprivation of that leasehold interest, including the right of support, the tenant is entitled to compensation.

The decision in New York Telephone Co. v. United States, 2 Cir., 136 F.2d 87, a case cited by the Government, does not mean that, since the fixtures have not been taken, their owners are not entitled to damages. In the New York Telephone case, the declaration of taking specified that the estate taken was "in fee simple, subject to existing public utility easements". The Court of Appeals held that the telephone company was not entitled to compensation in the proceeding for its easements even though the Government, after the taking, had physically interfered with its structures, saying, 136 F.2d p. 88, "Certainly the 'subject to' phrase in the declaration of taking and the petition in condemnation was enough to give notice to the appellant that its easements were not being taken and that the compensation deposited in the court had not been estimated with reference to them." The qualification in the declaration of taking in this case, "excepting, however, tenants' removable trade fixtures" cannot be construed as "subject, however, to the tenants' rights to maintain their removable trade fixtures" so as to bring this case within the holding in the New York Telephone case. A taking in fee with such a "subject to" phrase would be a contradiction in terms since the tenants' rights to maintain their trade fixtures are destroyed when their leasehold estates are extinguished by the vesting in the Government of all estates in the land.

The measure of damages for such a taking is much like that which Judge Friendly, in United States v. Certain Property etc., 306 F.2d 439, at page 453,

ruled would be applicable where a tenant removed compensable property under compulsion of the Government. In such a case, he said, the tenant is entitled to the difference between the value of the property in place and as removed. Justice requires that the cost of the removal should be added. In cases, of which there must be many, where the damages under this rule would exceed the value of the fixtures in place, the recovery cannot exceed that value. Damages assessed under this rule are certainly not so inadequate as to render the condemnation a taking of property without just compensation. Indeed they differ from the damages payable if the fixtures had been taken only in that, in substance, the tenant must accept the property itself and apply its value on account of his damages.

Since the funds deposited are for the benefit of the holders of all interests in the realty and since the tenants' right to the support of their trade fixtures in situ is one of the interests in the realty, the tenants' damages with respect to their removable trade fixtures are payable from the deposited funds.

The question of jurisdiction having been decided in favor of the right to proceed in this case, I go on to the petition of Steven Goodstein and Martin H. Goodstein for distribution of funds paid into court by the Government as compensation for those having interests in Parcel 11.

The Government has paid into court the sum of $511,000. There are six mortgages on the property, one held by the Trustees of the Estate and Property of the Diocesan Convention of New York, one held by Sol and Ethel Garmel, Bernice Myers and Samuel and Esther Myers, one held by Edith R. Gurell, one held by George C., Cathrine C., and Robert J. Reily, one held by Rena, Myron and Edward Sulzberger, and one held by Sarah R., Robert G., Bernard N. and Marjorie Mann.

Steven Goodstein and Martin H. Goodstein, the owners of the property, have made this application for the distribution

of the funds in the registry of the court. The holders of the Sulzberger, Mann, Gurell and Garmel mortgages ask that their mortgages be paid in full out of the deposited funds with interest to the date of payment.

I understand that the holders of the two remaining mortgages have stipulated with the owners as to the amounts that they will receive.

In addition to the claims for interest to date of payment, the holders of the Sulzberger mortgage, the Gurell mortgage and the Garmel mortgage ask for counsel fees payable out of the part of the deposit which would otherwise be payable to the owners.

The owners maintain that interest should be payable only to the date of taking and, in any event, not later than the date when the owners made application for withdrawal of the deposit.

Taking up first the question of interest, I must apply the provision of Section 258a of Title 40, United States Code, which provides with respect to the deposit, "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes * * * and other charges * * * as shall be just and equitable".

 Upon the payment into court of a deposit under Section 258a the cash becomes the substitute for the real property and the liens of mortgagees attach to the funds in lieu of the land. Swanson v. United States, 9 Cir., 156 F.2d 442, 170 A.L.R. 258. In the absence of some special agreement between the parties it would seem that the mortgagee would be entitled to have the whole amount of the deposit on which his mortgage was a lien held until the maturity of the mortgage as security for the principal of the debt and the interest to accrue. A mere deposit of the amount of the principal would not give him the equivalent of the security that he had when his lien was upon the land. It is true that condemnation would then work a hardship on the owner because the

property which had previously been security would no longer be earning income for him from which he could pay the interest. The mortgagee's rights to his full security would, however, be paramount.

In the usual mortgages made in the City of New York, however, this matter is taken care of by a special provision which was contained in the Gurell and, I am told, the Mann mortgage. That provision adds to the description of mortgaged property these words:

"TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever."

 Under that clause the mortgagee is obligated to accept the amount of any award and apply it to the satisfaction of the mortgage debt. He is not entitled to insist that the whole fund be retained as security for his mortgage.

The only case in this Circuit which has been cited to me on the question of allowance of interest is United States v. Certain Lands in Borough of Brooklyn, 2 Cir., 129 F.2d 577. There the court, after quoting the provision of Section 258a empowering the court to make such orders

as shall be just and equitable, made the following statement

"The sentence last quoted obviously refers to what is 'just and equitable' as between the lienors and lienees. The United States has no interest in how the fund is divided. See United States v. Dunnington, 146 U.S. 338, 352, 13 S.Ct. 79, 36 L. Ed. 996; City of St. Paul v. Certain Lands, etc., 8 Cir., 48 F.2d 805, 807; United States v. Certain Parcels of Land, D.C.Md., 40 F.Supp. 436, 443. The mortgage contract binds the mortgagor to pay interest until the principal debt shall be satisfied and pledges the land as security for performance of such promise. When title to the land vests in the condemnor the lien of the mortgage is transferred to the award. See Stevens v. Edwards, 5 Cir., 112 F.2d 534; Kaufman v. Valente, 115 Conn. 428, 434, 162 A. 693; Nichols, Law of Eminent Domain, 2d ed. p. 353. Since the lien was upon the whole of the land, it is 'just and equitable,' in our opinion, that it should cover the whole of the award and continue to secure interest accruing until the principal indebtedness is paid. Cf. Union Institution for Savings v. Boston, 129 Mass. 82, 96, 37 Am.Rep. 305."

Despite the statement that the lien should cover the whole of the award and continue to secure interest accruing until the principal indebtedness is paid, the court later said, 129 F.2d p. 579:

"In our view, the deposit of the award should not be treated as tendered to the mortgagee until the mortgagee accepts it as such by applying to the court for payment, or until the mortgagor appropriates it for that purpose by applying for distribution of the award between himself and the mortgagee."

 It is difficult to see why, when a fund is being held to secure the payment of a mortgage and the interest to accrue thereon, the mortgagor should be entitled to appropriate the fund for the payment of the mortgage by merely applying for distribution of the award between himself and the mortgagee. Nevertheless, no one here asks that the fund be maintained until payment of the mortgages in full at their due date. It seems to be assumed on all hands that the mortgagor has a right to have the mortgages paid off to the extent of the available deposit. Such a right can only arise from a condemnation clause similar to that quoted above and I must assume that there was such a clause in the mortgage involved in United States v. Certain Lands in the Borough of Brooklyn, supra. That case is controlling authority for payment of interest up to the date of the application by the owner for distribution in all cases where there is such a clause in the mortgage.

 I have not been told whether the condemnation clause was part of the mortgages of the other two who seek interest. If so they are entitled to interest up to the date of the application of the owners for distribution. If not, they are entitled to interest until the date of payment, unless the owners should prefer to leave the fund on deposit until the maturity of the mortgages. In the absence of a condemnation clause the mortgagee can insist upon deposit of the entire fund as security for payment of principal and interest to accrue. If the mortgagee agrees to accept prepayment instead, he may impose any condition he chooses including the payment of interest to the date of payment of the principal. The holders of the Sulzberger and Garmel mortgages have asked only for interest until payment and so may be said to have imposed that condition. They are entitled to interest to date of payment.

 The claim for counsel fees is based upon the common form of mortgage clause reading as follows:

"That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee

is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of six per cent. per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant."

I can think of no clearer case of a proceeding "in which it becomes necessary to * * * uphold the lien" of the mortgage than this and therefore hold that, in cases where that clause exists, the mortgagee's reasonable counsel fees are a lien upon the deposit.

In the case of the Sulzberger and Gurell mortgages, I find that the reasonable value of the services of the mortgagee's counsel necessarily rendered and to be rendered in upholding the lien of their mortgage is respectively $250. The same finding is made in the case of the Garmel mortgage except that the amount awarded is $100.

Settle order for distribution on notice to all parties in interest pursuant to Rule 5 of the Rules for the Distribution of Funds in Condemnation Proceedings of this court dated March 17, 1943.

Where the points decided in this opinion are determinative of the issues raised in the cases of funds deposited for other parcels, orders for distribution may be settled on notice.

## SUPPLEMENTARY OPINION

On the settlement of judgments under my opinion of December 12, 1963, counsel have asked me to reconsider my ruling that, where a mortgage contains the usual condemnation clause, interest should stop at the time when the mortgagor applies for distribution and that only where it does not contain such a clause should interest run until the date of payment.

In United States v. Certain Lands in Borough of Brooklyn, 2 Cir., 129 F.2d 577, neither owner nor mortgagee applied for distribution of the fund. The judgment appealed from allowed interest only to the date of taking. The Court of Appeals reversed the judgment and gave, 129 F.2d at page 579, what I read as directions for determining the date up to which interest should be allowed, as follows:

"In our view, the deposit of the award should not be treated as tendered to the mortgagee until the mortgagee accepts it as such by applying to the court for payment, or until the mortgagor appropriates it for that purpose by applying for distribution of the award between himself and the mortgagee."

The Court of Appeals had already said that, in its opinion, the lien of the mortgage "should cover the whole of the award and continue to secure interest accruing until the principal indebtedness is paid."

Since, therefore, in the absence of some special provision in the mortgage, the mortgagee would be absolutely entitled to have the fund maintained intact until the maturity of the mortgage, the Court's statement that the mortgagor could appropriate it for a tender to the mortgagee by applying for distribution between himself and the mortgagee, was applicable only to a case where there was such a special provision. Hence I assumed that there was such a special provision in that case. I am now advised by counsel that there was no such spe-

cial provision and that interest was finally paid for the full period up to the date of payment.

The fact that the rule indicated by the Court of Appeals that a deposit of the award should be treated as tendered to the mortgagee when "the mortgagor appropriates it for that purpose by applying for distribution of the award between himself and the mortgagee" was inapplicable under the facts of the case before it does not render the rule any the less binding on me.

The case of United States v. Certain Land in City of Paterson, N. J., 3 Cir., 322 F.2d 866, is pressed upon me as it was on the original argument. I feel bound, however, by the law as laid down in this Circuit.

■ For a second point counsel point out that some of the mortgages involved contain, in addition to the condemnation clause, a clause to the following general effect:

> "The Mortgagor, or any subsequent owner of the mortgaged premises, may prepay the whole of the principal indebtedness at any time, with interest to the date of such payment, upon giving the Mortgagee not less than twenty (20) days notice by registered mail of intention to prepay."

It is argued that, under this clause, the mortgagees are entitled to interest to date of payment.

The clause has no application. It deals with the case where the owner elects to prepay the whole mortgage debt with interest to the date of payment and to extinguish completely liability on the bond. Here the owner has done no more than tender part of the security to the mortgagee. The liability on the bond will be unaffected except to the extent that payment will be received from the security. The obligor on the bond will still be liable for interest from the date of the application to the date of payment of the principal.

■ The parties have asked for a ruling whether the mortgagor is "applying for distribution" within the words of the Court of Appeals when he serves his notice of motion or when he submits his application to the court. I rule that the application is not made until submitted to the court since it would be revocable up to that time.

As thus elaborated I adhere to my previous opinion.