138

UNITED STATES of America,
Plaintiff-Appellee,

v.

CERTAIN PROPERTY Located In the BOROUGH OF MANHATTAN, CITY, COUNTY AND STATE OF NEW YORK, consisting of all of Block 887 and bounded by East 31st and East 32nd Streets and Lexington and Third Avenues and 193 Realty Corp., etc., Defendants,

and

Steven and Martin H. Goodstein (Tract 11), Defendants-Appellants.

No. 173, Docket 30396.

United States Court of Appeals
Second Circuit.

Argued Dec. 12, 1966.

Decided March 13, 1967.

See also D.C., 32 F.R.D. 48, D.C., 225 F.Supp. 498.

Samuel Goldstein, New York City (Samuel Goldstein & Sons, New York City, on the brief), for appellants.

Edmund B. Clark, Atty., Department of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Atty., Department of Justice, on the brief), for appellee.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal by defendants, Steven and Martin H. Goodstein (appellants) from a judgment in a condemnation proceeding brought by plaintiff, United States of America (the Government), awarding to appellants "as just compensation for the property acquired" the sum of $600,000. Appellants find nothing "just" in this award and attribute it to the District Court's exclusion of (to them) vital evidence and to error in its instructions to the Commissioners who fixed this value.

On July 26, 1962, the Government filed proceedings to condemn the fee simple to the land herein involved and on September 30, 1963, filed a declaration of taking for public use of "an estate in fee simple." [1]

*The Trial*

■ The District Court (the Court) appointed three Commissioners. Rule 71A(h) of the Federal Rules of Civil Procedure. The Court and the Commissioners sat together throughout the trial. The Court ruled upon the admissibility of evidence and at the conclusion of the trial instructed the Commissioners as to the law, by which they were to be governed in reaching their determination of value upon the facts presented. Thus the Commissioners were, in effect, a jury of three, albeit the relationship between court and jury was substantially closer than upon an ordinary trial. However, virtually the same principles should be applied on appellate review, namely, the facts as found by the fact-finding body should not be disturbed unless they were based upon erroneous legal standards conveyed to it in the Court's instructions. Unlike the ordinary jury trial resulting in merely a general verdict, the nature of the basis for the determination here is disclosed by the Commissioners' Report and Supplemental Report from which may be obtained a quite accurate account of the strict adherence which they gave to the Court's instructions.

*The Facts*

The record reveals a remarkable agreement as to the facts and the invariable disagreement as to the experts' conclusions and as to legal theories.

In August 1961 appellants [2] entered into four contracts of sale for the purchase of four parcels of property on the west side of Third Avenue, New York City, between East 31st Street and East 32nd Street for the purpose of erecting a high-rise apartment house.

(1) 464–468 Third Avenue and 166 East 32nd Street were purchased for $165,000 subject to the Ginger Estates, Inc., lease on the Third Avenue property

---

1. The condemnation and the taking also included "the improvements thereon and appurtenances thereto, including all estates and interests therein, excepting, however, tenants' removable trade fixtures." The Commissioners took testimony with respect to both fee and fixtures. The propriety of the judgment fixing the value of the fixtures is the subject of another appeal to this Court.

2. Although they acted through a dummy corporation, appellants will be considered as the purchaser.

and the Ellen Estates, Inc., lease on the 32nd Street property. Appellants purchased these leases for $95,000 and $25,000, respectively, and thus obtained the entire fee.

(2) 168–170 East 32nd Street was purchased for $100,000 subject to the Gerber lease which was acquired for $5,000.

(3) 462 Third Avenue was purchased for $120,000.

(4) 458 Third Avenue was purchased for $180,000.

These properties referred to as Tract 11 were thus acquired for $690,000, $565,000 for the properties subject to the leases and $125,000 for the leases.

*Exclusion of the Price Paid for the Leases*

■ The Court ruled, in effect, that $565,000 constituted the total purchase price for the assembled property. However, this sum did not obtain for appellants the fee which was condemned. $690,000 was actually required for this purpose. Significance may be attached to the Government's failure on appeal to justify (or even discuss) the exclusion of evidence relating to the cost of acquisition of the leases. Unencumbered property might well command a higher price and have a higher market value than a lease-encumbered property. Although the $125,000 paid need not necessarily reflect the additional compensation to be awarded, in our opinion testimony as to the leases and the amounts paid therefor should have been before the Commissioners and they should have been instructed to consider the total price paid by appellants for the entire fee taken by the Government. The importance in the minds of the Commissioners of the $565,000 figure as the purchase price appears in their first Report in which this figure is used. For this reason (exclusion of prices paid for the leases) alone, these proceedings must be remanded for further consideration of value in the light of such proof.

*The Package Deal*

Appellants also claim error in the exclusion of testimony dealing with the various operations which appellants had undertaken on the "road to fulfillment" of their apartment house project. The contents of this "package" included (1) building plans prepared (claimed cost some $90,000) and filed to take advantage of the less restrictive zoning situation prior to a change (possibly allowing 30% fewer apartments) effective December 15, 1961; demolition and possession costs (appellants' expert claimed $5 a square foot); F. H. A. financing (an alleged commitment about to be issued when the Government announced its taking); a Consolidated Edison extension of its steam lines from East 35th Street (cancellation of the contract claimed to have subjected appellants to a liability of $120,965); test borings on the site; and eleven other contracts for building supplies. All these preparations gave to the land, so say appellants, an enhanced value on September 30, 1963, the date of the Government's taking.

The Court refused to permit appellants' expert to testify as to the value which he would attribute to the property in its then (September 1963) state of development, largely on the theory that to do so would involve a valuation on a "business venture basis." It regarded these items as "non-compensable non-realty items." As to such items, namely, "possible availability of FHA financing, favorable zoning situation and availability of public steam supply," the Court instructed the Commissioners that, "You are not to value and award compensation for these items." However, it immediately added, "You are to consider them only as they bear upon the value of the realty." And then followed the limiting instruction that these facts were to be weighed in determining the property's highest and best use but that the items themselves were not compensable. But the Court then qualified this by saying that if the Commissioners found "that realty here was of a type which would normally have been sold in the market as part of a package deal," they might "consider the price which would have been paid for such a package." However,

there was straightway an instruction that if they did consider "such a price in bearing upon the value here," they were to deduct such part as "represents the amount attributable to non-compensable non-realty items."

Possibly, the theory of the trial may explain what otherwise might appear to be a seeming inconsistency. At the outset, appellants clearly represented that they did not intend to value the property by the capitalization of projected earnings method. As appellants' expert gave his testimony, he adhered to the standard fair market value theory based on comparable sales in the vicinity. It was only when he approached the items which the Court regarded to be in the "business venture" category that he was not permitted to add these as factors entering into his opinion of value.

■ In our opinion, the Court properly excluded these "business venture" or "package deal" items. In the first place, appellants concede (Brief p. 19) that "There were no available comparable sales of package deals, which could be made applicable to the specific facts in appellants' property." In the second place and of greater importance, the parties had chosen in advance of trial their field of battle, namely, fair market value, and had aligned their forces accordingly even to the exchange of their plans of attack—lists of asserted comparable sales. Thus, the Court was quite justified in prohibiting appellants' attempted diversionary skirmishes into "business venture" terrain.

*The Appraisals*

Underlying appellants' claim of failure to receive just compensation is their belief that they should have been awarded land values and compensation for all expenses and commitments made in contemplation of their building project or that the "real estate" value should reflect those items. This belief and appellants' attempt to support it by proof accounts for much of the cross-purpose argument and testimony in the record. Particularly in cases where appraisal testimony is offered, there must be some common denominator. The very word "comparable" assumes some standard for comparability.

Third Avenue in the 32nd Street area over the recent years has undergone quite a metamorphosis. The old four and five-story tenements and street level stores have given way to modern high-rise apartments as higher level residential zones have been rapidly extended toward the east. Little wonder that both appraisers were able to find many comparable sales in the vicinity.

*Wittman*

Appellants state, "Mr. Wittman's [their expert] valuation was based upon the amount a willing buyer would pay a willing seller for this property 'on the road to fulfillment' of construction. Such sales are known in the real estate market as 'package deals.' " Mr. Wittman included all the work undertaken, and contended that the land value and the land with the approved building plans could not be separated. His testimony clearly shows that he regarded land value as distinct from real estate value. ("Part of the total real estate value is land value, but the total value is real estate value. * * * It's part of the fulfillment of construction.") Thus, the Wittman figure of $800,000 was for "real estate." The figure of $707,100 which he ascribed to the land is easily understood. An assumed appraisal area of 14,-542 square feet—a $50 per square foot factor based upon his "comparable" sales—the $727,100 thus obtained—the $20,000 demolition expenditure deducted therefrom—combine to produce his $707,-100 figure.

*Kazdin*

The Government's expert, Mr. Kazdin, restricted his "vicinity" more closely to 32nd Street and did not find the Gramercy Park-Stuyvesant Park section "south of 23rd Street comparable" as did Mr. Wittman. He did not consider properties below 28th Street because he found "a sufficient number of sales giving [him] me clues as to the market in the immediate locality." Mr. Kazdin's

appraised fair market value was $511,-000.

■■ It is not the function of this Court to speculate upon the factors which caused the Commissioners to reach their conclusion of $600,000. Their Supplemental Report shows that they considered the partial (the $20,000 expended) demolition [3] and the contracts of sale, i. e., $565,000. This figure they stated was "in keeping with the market value in 1961." This figure, however, might have been materially enhanced had they been allowed to see the lease purchase contracts and been instructed that the total purchase price to appellants was $690,000. Thus, their determination of fair market value might well have been different had they had such proof and such instructions. For this reason, we feel that to achieve "just compensation" the proceedings should be returned to the Commissioners for a redetermination in the light of the lease purchases.

■ We find no error in the Court's instructions regarding the Government's payment in cash. The Court merely admonished the Commissioners not to add an increment because of values which might differ were there a "non-cash purchase."

■ Appellants contend that the filing of the complaint (July 26, 1962), causing them to stop construction work some fourteenth months before the taking (September 30, 1963), constituted a "taking" and deprivation of possession as of the earlier date. However, "The filing of a petition in condemnation without taking possession is not a taking" 23 Tracts of Land v. United States, 177 F.2d 967, 970 (6 Cir. 1949). It cannot be said that appellants were deprived of the fair rental value of their property (except as they chose to be so deprived) during this period. See United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.

2d 1109 (1958); Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L. Ed. 240 (1939); Bauman v. Ross, 167 U.S. 548, 598, 17 S.Ct. 966, 42 L.Ed. 270 (1897); United States v. Mahowald, 209 F.2d 751 (C.A.8, 1954); United States v. Johns, 146 F.2d 92 (C.A.9, 1944); Miller v. United States, 61 App.D.C. 58, 57 F.2d 424, 426 (1932). Furthermore, the property was valued as of September 30, 1963. We hold that the failure to make any award for fair rental upon the facts here presented was not error.

Reversed and remanded for further proceedings in accordance with this opinion.

---

3. Where the comparable sales relied upon involved properties on which there were buildings to be demolished and tenants to be dispossessed, except for the large sum paid for the leases in this case, there was a sufficient similarity between them and to appellants' property to justify the exclusion of actual dispossession and demolition costs.